UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Jeanie Montgomery,                                    Civil No. 14-557 (JRT/FLN)

               Plaintiff,
                                                      **REPORT AND**
       v.                                             **RECOMMENDATION**

Compass Airlines, LLC,

               Defendant.

_____

Mark Greenman for Plaintiff.
Todd Noteboom and Jeffrey Mason for Defendant.

_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on Defendant

Compass Airlines, LLC's motion to dismiss (ECF No. 16). This matter was referred to the

undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For

the reasons set forth below, the Court recommends that Defendant's motion to dismiss be

**GRANTED**.

## I. FINDINGS OF FACT

This case arises out of an employment dispute between Plaintiff Jeanie Montgomery and her

former employer, Defendant Compass Airlines, LLC (Compass). *See generally* Second Am. Compl.,

ECF No. 10.  Compass is a regional airline operator based in Minneapolis, Minnesota.  Mielke Decl.

¶ 2, ECF No. 18. Compass  qualifies as an air carrier as defined by the Railway Labor Act,  45

U.S.C. § 151. Def.'s Mem. in Supp. of Mot. to Dismiss 3, ECF No. 17.

A.      **Arbitration Agreement**

Plaintiff Montgomery worked for Defendant as a flight attendant from February 2008 to

December 13, 2013. ECF No. 10 ¶ 5. Prior to being hired as a flight attendant, and as a prerequisite

condition for being considered for employment by Compass, Montgomery signed an Application

Certification and Agreement (the Arbitration Agreement) on December 7, 2007. Def.'s Ex. 1, ECF

No. 19. The Arbitration Agreement contained the following language regarding arbitration:

> I UNDERSTAND AND AGREE that as a condition of my candidacy for
> employment with Compass any legal claims or disputes that Compass and I may
> have (including any dispute with any management or other employee or agent acting
> on behalf of the Company) with respect to my application for employment,
> employment or termination of employment (except for worker's compensation and
> unemployment compensation claims and claims arising out of any applicable
> collective bargaining agreement) shall be decided exclusively by final and binding
> arbitration, conducted pursuant to the American Arbitration Association's National
> Employment Dispute Resolution Rules, before one neutral arbitrator, who shall be
> selected by mutual agreement of the parties and bound to follow the applicable law.
> Both Compass and I intend for this agreement to be construed as broadly as possible
> to cover, by way of example only, any claims under federal, state or local statutes or
> common law, such as Title VII of the Civil Rights Act, the Age Discrimination in
> Employment Act, the Americans with Disabilities Act, the Family and Medical
> Leave Act, the Virginia Human Rights Act, the Minnesota Human Rights Act, the
> Michigan Elliot-Larsen Civil Rights Act, the Tennessee Human Rights Act, the law
> of contract and the law of tort and all questions of arbitrability. I understand that this
> means that neither Compass nor I can file a lawsuit in court regarding any
> employment-related legal issue not covered by an applicable collective bargaining
> agreement (including my application for or termination from employment) and that
> both Compass and I specifically waive the right to a jury trial on any such issue. This
> agreement will be interpreted and enforced under the Federal Arbitration Act, 9
> U.S.C. § 1, *et seq.*, where applicable, and otherwise under the Minnesota Uniform
> Arbitration Act, Minn. Stat. § 572.08 *et seq.*

*Id*. Having satisfied the prerequisites to employment, Montgomery was subsequently hired by

Compass on or about February 2, 2008. ECF No. 18 ¶ 4.

**B.      Collective Bargaining Agreement**

At the time Compass hired Montgomery, Compass flight attendants were not subject to a

collective bargaining agreement. ECF No. 18 ¶¶ 4,7. However, on May 1, 2013 the Association of

Flight Attendants (AFA)[1] entered into a Collective Bargaining Agreement (CBA) with Compass. ECF No. 18 ¶ 7. Accordingly, since May 1, 2013, the CBA has governed the terms and conditions of flight attendant employment, including leaves of absence, medical examinations, discipline and discharge, grievances, and arbitration. *Id*., Ex. A. Section 10 of the CBA states the procedures used for filing grievances. *Id*. at 41–45. The CBA further establishes a System Board of Adjustment to address grievances that are not resolved earlier in the grievance process. *Id*. at 46–50. Section 11.A states:

> In compliance with Section 204, Title II, of the Railway Labor Act, as amended, the parties hereby establish a System Board of Adjustment for the purpose of adjusting and deciding grievances arising under the terms of this Agreement, which are properly submitted to it in accordance with Section 10, Grievance Procedures. Such Board will be known as the Compass Flight Attendant System Board of Adjustment (hereinafter referred to as the "System Board.")

*Id*. at 46. The section specifies that decisions of the System Board "shall be final and binding." *Id*. at 50. Finally, Section 14 addresses leaves of absence, with Section 14.D stating that "[t]he Company will comply with the provisions of the Family and Medical Leave Act (FMLA)." *Id*. at 55.

C.      **Montgomery's termination and subsequent grievance procedure**

Montgomery suffers from migraine headaches and sinus infections, both of which are considered serious health conditions pursuant to the Family Medical Leave Act (FMLA), 29 U.S.C. § 2611. ECF No. 10 ¶ 6. Starting in 2013, Montgomery began occasionally missing work due to her health conditions. *Id*. ¶ 7. In September of 2013, Montgomery requested intermittent FMLA leave in order to accommodate any future absences arising from her migraines and sinus infections. *Id.*

---

[1]      The AFA is the certified bargaining representative for Compass flight attendants under the Railway Labor Act. ECF No. 17 at 4.

¶ 8. That is, Montgomery sought FMLA leave time so that any future absences related to her conditions would not be counted against her under Compass's absenteeism policy. *Id.*

Pursuant to her request, Montgomery's doctor submitted a signed certification to Compass that Montgomery was indeed eligible for leave under the FMLA. *Id.* ¶ 9. Compass eventually denied Montgomery's leave request because the doctor did not indicate on the form the probable number of treatments needed or the duration and intervals of treatments. *Id.* ¶ 10. Accordingly, Montgomery resubmitted the FMLA certification; this version of the certification, however, was signed by a nurse. *Id.* ¶ 12. Defendant then required Montgomery to submit to a medical exam conducted by a company doctor, and Montgomery underwent such an exam on October 18, 2013. *Id.* ¶ 13. The consulting doctor concluded that Montgomery was unfit for duty as a flight attendant. *Id.* ¶ 14.

On November 12, 2013 Montgomery's doctor again sent correspondence to Compass, stating that he did not believe Montgomery was unfit to fly or suffering from any conditions which would prevent her from completing her duties. *Id.* ¶ 15. Subsequently, on November 15, 2013, Compass again denied Montgomery's FMLA request based on the consulting doctor's conclusion that Montgomery was unfit for duty. *Id.* ¶ 16. In denying the FMLA request, Compass concluded that Montgomery's absences in October and November were not covered under the FMLA and counted the absences as sick days. *Id.* Montgomery then requested that a third doctor be chosen to evaluate her fitness for duty, but Compass did not agree to a third evaluation. *Id.* ¶¶ 17–18.

On December 9, 2013, Compass notified Montgomery via email that a meeting was scheduled for December 12, 2013 regarding an allegation that Montgomery submitted "fraudulent, forged and/or altered documentation in connection with a request for leave under the FMLA." *Id.* ¶ 19. Montgomery's doctor submitted a statement to Compass on December 10, 2013 verifying the

previous FMLA certifications:

> The certification of Family and Medical Leave request for Jeanie Montgomery dated September 10, 2013, September 13, 2013, and October 14, 2013, was completed by me and my medical staff. These certifications are not fraudulent, forged and/or altered documentation. I have reviewed the forms and certify that these are in fact me [sic] and my office staff's handwriting.

*Id.* ¶ 21.

At the December 12, 2013 meeting, Nikole Mielke, the manager of inflight operations at Compass, accused Montgomery of submitting forged or altered documentation in relation to her FMLA leave request. *Id.* ¶ 22; ECF No. 18 ¶ 3. Mielke's statement was made in the presence of Catriona Bagley. ECF No. 10 ¶ 22. Although Montgomery adamantly denied such allegations, Compass terminated Montgomery's employment in a December 13, 2013 letter stating, "Effective today, December 13, 2013, your employment with Compass Airlines is being terminated for submitting fraudulent, forged and /or altered documentation in connection with a request for leave under the Family and Medical Leave Act (FMLA)." *Id.* ¶ 23.

Montgomery's union filed a grievance related to her termination on December 20, 2013. ECF No. 18 ¶ 14. The grievance contends that Montgomery was terminated without just cause. To date, the grievance is still pending. *Id. ¶* 16.

**D.      Claims and Present Motion**

Montgomery initiated this lawsuit on February 28, 2014, asserting three claims. *See* Compl., ECF No. 1. Count I alleges that Compass violated the FMLA. ECF No. 10 ¶¶ 24–30.  Count II states that accusations made by Compass employees related to Montgomery forging FMLA documents were defamatory. *Id.* ¶¶ 31–35. Finally, Count III asserts a claim for negligent infliction of emotional distress. *Id.* ¶¶ 36–38. Compass responded with the instant motion to dismiss, arguing that this Court

lacks subject matter jurisdiction over Montgomery's FMLA claim and the claims for defamation and negligent infliction of emotional distress fail to state a claim upon which relief can be granted. ECF No. 16; *see generally* ECF No. 17.

## II. STANDARD OF REVIEW

### A.    Rule 12(b)(1) Motion to Dismiss

The jurisdictional power of federal courts is defined by Article III of the Constitution. Because federal courts are not courts of general jurisdiction, the issue of subject matter jurisdiction may be raised at any time. *See* Fed. R. Civ. P. 12(b)(1); *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) (stating that subject matter jurisdiction may never be forfeited or waived). Indeed, a federal court has a "special obligation" to satisfy itself of its own jurisdiction. *See Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). If subject matter jurisdiction is lacking, the court must dismiss the action. *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004).

A motion attacking the Court's subject matter jurisdiction is governed by Rule 12(b)(1) of the Federal Rules of Civil Procedure. A Rule 12(b)(1) motion to dismiss can either (1) attack the complaint's claim of jurisdiction on its face or (2) attack the factual basis for jurisdiction. *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). A facial challenge to subject-matter jurisdiction argues that factual allegations made in a complaint—even if truthful—are insufficient to establish jurisdiction. *Carlson Holdings, Inc. v. NAFCO Ins. Co.*, 205 F. Supp. 2d 1069, 1073 (D. Minn. 2001). When analyzing a facial challenge to jurisdiction, the Court considers the pleadings alone. *Id.* In contrast, "[w]here a defendant mounts a 'factual attack' on the plaintiff's complaint, 'the court considers matters outside the pleadings and the non-moving party does not have the benefit of 12(b)(6) safeguards' in that the court may not presume the factual allegations in the plaintiff's

complaint are true." *Rector v. State Farm Mut. Ins. Co.*, 392 F. Supp. 2d 1069, 1071 (W.D. Mo. 2005) (quoting *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990)).

**B.      Rule 12(b)(6) Motion to Dismiss**

In considering a Rule 12(b)(6) motion, the court views the pleadings in the light most favorable to the nonmoving party and treats the alleged facts as true.  *See Ossman v. Diana Corp.*, 825 F. Supp. 870, 879–80 (D. Minn. 1993). Conclusions of law made by the nonmoving party, however, are not "blindly accept[ed]." *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).  A Rule 12(b)(6) motion to dismiss is granted when the factual allegations, even assumed to be true, do not entitle that party to relief. *See, e.g.*, *Taxi Connection v. Dakota, Minn. & E. R.R. Corp.*, 513 F.3d 823, 826–27 (8th Cir. 2008).

Under Rule 8(a) of the Federal Rules of Civil Procedure, pleadings "shall contain a short and plain statement of the claim showing that the pleader is entitled to relief." A pleading must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but not 'shown'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

### III. LEGAL ANALYSIS

**A.      Subject Matter Jurisdiction**

Compass maintains that this Court lacks subject matter jurisdiction over Montgomery's complaint for three reasons: (1) the CBA governing the terms of Montgomery's employment with Compass mandates arbitration; (2) Montgomery's claims are subject to the Arbitration Agreement she signed prior to commencing employment with Compass; and (3) the claims are preempted by the Railway Labor Act because they necessitate an interpretation of the CBA.

As to the first argument, Compass contends that this Court does not maintain subject matter jurisdiction over Montgomery's FMLA claim because the CBA entered into by Compass and the Association of Flight Attendants requires arbitration. ECF No. 17 at 8–11.  Compass points to the broad language of Section 11.A of the CBA which creates a System Board of Adjustment "for the purpose of adjusting and deciding grievances arising under the terms of this Agreement." ECF No. 18-1 at 46. Additionally, Compass cites to Section 14.D which states that Compass "will comply with the provisions of the Family and Medical Leave Act." *Id*. at 55. Compass maintains that these two provisions, when read together, necessitate arbitration because the CBA explicitly references the FMLA and therefore Montgomery's claim arises under the terms of the agreement. ECF No. 17 at 11. The Court agrees.

The Supreme Court has repeatedly held that in order for a collective bargaining agreement to properly command arbitration, such a requirement must be unambiguous. *See, e.g., Wright v. Universal Maritime Serv. Corp.*, 525 U.S. 70, 79 (1998) ("Not only is petitioner's statutory claim not subject to a presumption of arbitrability; we think any CBA requirement to arbitrate it must be particularly clear."). Accordingly, the Court has stated that, in order for a provision mandating arbitration in a collective bargaining agreement to be enforceable, such a provision must be "clear and unmistakable."*Id*. at 80.

For example, in *14 Penn Plaza LLC v. Pyett*, the Supreme Court found that a collective bargaining agreement was sufficiently clear to compel arbitration of the plaintiff's employment discrimination claim. 556 U.S. 247 (2009). Specifically, the Court examined Section 30 of the agreement, which stated, in part:

> There shall be no discrimination against any present or future employee by reason of race, creed, color, age, disability, national origin, sex, union membership, or any other characteristic protected by law, including, but not limited to, claims made pursuant to Title VII of the Civil Rights Act, the Americans with Disabilities Act, the Age Discrimination in Employee Act, the New York State Human Rights Law, the New York City Human Rights Code, . . . or any other similar laws, rules, or regulations. All such claims shall be subject to the grievance and arbitration procedures (Articles V and VI) as the sole and exclusive remedy for violations.

*Id.* at 252. The Court stated that this language required arbitration of statutory antidiscrimination claims because it "clearly and unmistakably requires respondents to arbitrate." *Id.* at 260.

Contrastingly, in *Wright v. Universal Maritime Service Corp.*, the Supreme Court concluded that CBA language did not satisfy the clear and unmistakable standard needed to waive an employee's right to bring statutory claims under the Americans with Disabilities Act (ADA) in a judicial forum. 525 U.S. 70 (1998). The *Wright* CBA stated that "[m]atters under dispute which cannot be promptly settled between the Local and an individual Employer shall . . . be referred [to a grievance process]" and that "[t]he Union agrees that this Agreement is intended to cover all matters affecting wages, hours, and other terms and conditions of employment." *Id.* at 72-73. In concluding that the CBA was not clear and unmistakable, the Court highlighted the breadth of the arbitration clause and the fact that the CBA made no specific reference to the ADA. *Id.* at 80 (stating that the "arbitration clause is very general, providing for arbitration of 'matters under dispute' which could be understood to mean matters in dispute under the contract. And the remainder of the contract contains no explicit incorporation of statutory antidiscrmination requirements").

In the present case, Montgomery maintains that the arbitration provision in the Compass

CBA does not satisfy the "clear and unmistakable" standard needed to compel arbitration of her

FMLA claim.  In support of this contention, Montgomery cites to *Bradley v. Compass Airlines, LLC*,

No. 12-CV-2471 SRN/JSM, 2013 WL 2443848 (D. Minn. June 5, 2013), a case involving the same

defendant as the present action in which the court evaluated similar provisions of a collective

bargaining agreement. Mem. in Opp'n to Mot. to Dismiss, ECF No. 23 at 8-10. In *Bradley,* the court

examined whether a former Compass pilot's discrimination and reprisal claims were subject to

mandatory arbitration. The collective bargaining agreement in that case (Compass Pilot CBA)

contained a substantively identical general arbitration clause to that in the present action:

> In compliance with Section 204, Title II, of the Railway Labor Act, as amended, the
> parties establish a System Board of Adjustment for the purpose of adjusting and
> deciding disputes or grievances arising under the terms of this Agreement or any
> supplemental agreement. Such Board will be known as the Compass Airlines Pilots'
> System Board of Adjustment (hereinafter referred to as the "System Board").

*Bradley*, 2013 WL 2443848 at *1. The Compass Pilot CBA further contained a non-discrimination

clause:

> The Company and the Association agree that they will comply with applicable State
> and Federal laws which prohibit discrimination against any employee because of
> race, creed, color, religion, national origin, sex, age, disability or status as a military
> veteran.

*Id*. In differentiating the above contractual provisions with the provision in *14 Penn Plaza*, the court

in *Bradley* emphasized that unlike the CBA in *14 Penn Plaza*, the Compass Pilot CBA did not

address "claims arising under non-discrimination statutes with mandatory grievance and arbitration

procedures in the same paragraph." *Id.* at *5. Further, the court stressed that the non-discrimination

clause in the Compass Pilot CBA did not "specify any federal or state laws" and the arbitration

provision "did not limit [the plaintiff's] relief for statutory claims to arbitration." *Id*. Here,

Montgomery contends that because the arbitration provision in the present action is identical to the provision in the Compass Pilot CBA, the Court should adopt the reasoning of *Bradley*. ECF No. 23 at 9–10. Montgomery further stresses that the Compass CBA, like in *Bradley*, does not contain a reference to FMLA claims in the same paragraph as the arbitration requirement. *Id*. at 9.

The Court concludes that the language of the CBA at issue here falls somewhere in between the provision the Supreme Court found enforceable in *14 Pen Plaza* and the CBAs found insufficiently clear in *Wright* and *Bradley*. Like the *Wright* and *Bradley* arbitration provisions, Section 11. A of the Compass CBA does not contain within the same paragraph a reference to statutory claims or specific rights arising under the FMLA. However, in contrast to *Wright* and *Bradley*, the Compass CBA does contain a specific reference to the FMLA in another section of the agreement; Section 14.D explicitly provides that "[t]he Company will comply with the provisions of the Family and Medical Leave Act (FMLA)."

The Court finds this distinction—that is, the overt reference and naming of the FMLA in another provision of the CBA—determinative. As noted above, the Supreme Court in *Wright* found the CBA language at issue in that case insufficiently clear to require arbitration and, in doing so, placed special emphasis on the fact that the agreement contained no incorporation of the statutory claims at issue. *Wright*, 525 U.S. at 396 ("And the remainder of the contract contains no explicit incorporation of statutory antidiscrimination requirements.").

Moreover, the Fifth Circuit evaluated this very situation in *Gilbert v. Donahoe* and concluded that a CBA, which contained a general grievance clause and a separate reference to the statutory claim in another section of the CBA, was sufficiently clear to require arbitration. 751 F.3d 303 (5th Cir. 2014). Specifically, one section of the *Gilbert* CBA established a grievance procedure

for employees, defining grievance as "the complaint of an employee or of the Union which involves the interpretation, application of, or compliance with the provisions of this Agreement." *Id.* at 309. Additionally, another section of the *Gilbert* CBA explicitly incorporated into the agreement the prohibition of discrimination of handicapped employees as contained in the Rehabilitation Act. *Id.* at 309–10. The court concluded that, when reading these two separate provisions together, the collective bargaining agreement clearly and unmistakably mandated arbitration of the plaintiff's Rehabilitation Act claims. *Id.* at 310. In finding that the court lacked subject matter jurisdiction over the Rehabilitation Act claim, the court emphasized that the CBA complied with the dicta in *Wright* requiring identification of "the specific statutes the agreement purports to incorporate." *Id.* Contrastingly, the court maintained jurisdiction over an FMLA claim, finding that the *Gilbert* CBA did not mandate arbitration of this claim because it did not overtly reference the FMLA. *Id.*

Here, as in *Gilbert*, although the arbitration provision (11.A) generally establishes an arbitration procedure for grievances arising out of the agreement, a separate provision of the agreement (14.D) explicitly references the statute at issue by stating that Compass will "comply with the provisions of the Family and Medical Leave Act (FMLA)." The Court finds that, when taken together, Sections 11.A and 14.D clearly and unmistakably require arbitration of Montgomery's FMLA claim because the Compass CBA names the "specific statute[] the agreement purports to incorporate" into the arbitration provision as suggested by *Wright*. In sum, the actual identification of the FMLA in Section 14.D makes it clear and unmistakable that claims arising under the FMLA are incorporated into the Compass CBA and therefore subject to required arbitration.

Accordingly, the Court recommends dismissal of Montgomery's FMLA claim for lack of subject matter jurisdiction. Because the Court concludes that arbitration of Montgomery's FMLA

claim is mandatory pursuant to the Compass CBA, the Court declines to address Compass's

remaining arguments for arbitration relating to the pre-employment Arbitration Agreement and the

Railway Labor Act.

**B.      State Law Claims of Defamation and Negligent Infliction of Emotional Distress**

Because this Court recommends dismissing Montgomery's federal claim under the FMLA,

the Court finds that it is inappropriate to exercise supplemental jurisdiction over the remaining state

law claims.

Pursuant to 28 U.S.C. § 1367(c)(3), a federal district court may decline to exercise

supplemental jurisdiction over state law claims if the court has "dismissed all claims over which it

has original jurisdiction." *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010). A court may exercise

discretion when concluding whether to continue to entertain state law claims after dismissing federal

claims in a case. *Quinn v. Ocwen Fed. Bank FSB*, 470 F.3d 1240, 1249 (8th Cir. 2006). However,

the Eighth Circuit has specified that when "resolution of the remaining claims depends solely on a

determination of state law, the Court should decline to exercise jurisdiction." *Glorvigen v. Cirrus*

*Design Corp.*, 581 F.3d 737, 749 (8th Cir. 2009) (citing *Farris v. Exotic Rubber and Plastics of*

*Minn., Inc.*, 165 F. Supp. 2d 916, 919 (D. Minn. 2001)). When deciding whether to exercise

supplemental jurisdiction, courts look to a number of factors including judicial efficiency,

convenience, and fairness to litigators. *Condor Corp. v. City of St. Paul*, 912 F.2d 215, 221 (8th Cir.

1990) (internal citation omitted). In evaluating these factors, Courts often consider "the stage of

litigation; the difficulty of the state claim; the amount of time and energy necessary for the claim's

resolution; and the availability of a state forum." *Goddard, Inc. v. Henry's Foods, Inc.*, 291 F. Supp.

2d 1021, 1051 (D. Minn. 2003) (internal citations and quotation marks omitted).

Considering the above factors, the Court concludes that this is not the appropriate forum for adjudicating the state law claims of defamation and negligent infliction of emotional distress. Importantly, this case remains in the early stages of litigation. This Court has not exerted substantial time or resources into resolving the dispute. Likewise, because this case is currently in the early stages of litigation, failing to exercise supplemental jurisdiction would not prejudice either party. Finally, an available state forum exists in which to resolve the remaining claims. In sum, "this case is the usual case in which all federal-law claims are eliminated before trial wherein the balance of factors to be considered point toward declining to exercise jurisdiction over the remaining state-law claims." *Magee v. Trustees of the Hamline Univ., Minn.*, No. 11-949, 2013 WL 1332031, at * 9 (D. Minn. Mar. 29, 2013) (internal quotation marks omitted) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

## IV. RECOMMENDATION

Based upon all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant's motion to dismiss (ECF No. 16) be **GRANTED** and the action be **DISMISSED** without prejudice.

DATED: January 29, 2015                        s/Franklin L. Noel
                                               FRANKLIN L. NOEL
                                               United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **February 13, 2015**, written objections that specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within fourteen (14) days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. §

636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **February 15, 2015,** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.