# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

JEANIE MONTGOMERY,

                Plaintiff,

v.

COMPASS AIRLINES, LLC,

                Defendant.

Civil No. 14-557 (JRT/FLN)

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE**

---

Mark A. Greenman, **LAW OFFICE OF MARK A. GREENMAN,** 10 South Fifth Street, Suite 700, Minneapolis, MN 55402, for plaintiff.

Rodney A. Harrison, **OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**, 7700 Bonhomme Avenue, Suite 650, St. Louis, MO 63105; Hal A. Shillingstad, **OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**, 90 South Seventh Street, Suite 3500, Minneapolis, MN 55402; and David J.A. Hayes III, **COMPASS AIRLINES LLC**, 11495 Navaid Road, St. Louis, MO 63044, for defendant.

Plaintiff Jeanie Montgomery brings this action against her former employer, Defendant Compass Airlines, LLC ("Compass"), for a violation of the Family and Medical Leave Act ("FMLA") and for defamation and negligent infliction of emotional distress. Montgomery, a flight attendant for Compass from 2008 to 2013, suffers from migraine headaches and sinus infections. She alleges that Compass denied her protections to which she was entitled under the FMLA when she requested medical leave, defaming her in the process. Compass moved to dismiss Montgomery's complaint for lack of subject matter jurisdiction and failure to state a claim. On January 30, 2015, United States Magistrate Judge Franklin L. Noel issued a Report and Recommendation

("R&R"), recommending that the Court grant Compass's motion to dismiss.   The Magistrate Judge concluded that Montgomery's FMLA claim is subject to mandatory arbitration under Compass's collective bargaining agreement and that supplemental jurisdiction over the remaining state law claims would not be appropriate.

This matter is now before the Court on Montgomery's objection to the Magistrate Judge's R&R.   Because the Court concludes that Compass's collective bargaining agreement contains a clear and unmistakable agreement to arbitrate disputes arising under the FMLA, the Court will overrule Montgomery's objection, adopt the R&R, and grant Compass's motion to dismiss this action for lack of subject matter jurisdiction.

## BACKGROUND

## I.     FMLA LEAVE REQUESTS AND TERMINATION

Montgomery was employed as a flight attendant by Minnesota-based air carrier Compass from February 2008 to December 13, 2013.   (Second Am. Compl. ("Compl.") ¶ 5, June 18, 2014, Docket No. 10; Decl. of Nicole Mielke ("Mielke Decl.") ¶ 2, July 30, 2014, Docket No. 18.)   Montgomery suffers from migraine headaches and sinus infections that caused her to begin missing work in 2013.   (Compl. ¶¶ 6-7.)   So that she would not be penalized under Compass's absenteeism policy for future absences caused by her medical conditions, Montgomery requested intermittent FMLA leave in September 2013.   (*Id.* ¶ 8.)   Along with her request for leave, Montgomery submitted a certification of health that was signed and faxed to Compass by her doctor.   (*Id.* ¶ 9.) Because the certification did not specify the number, duration, or intervals of

Montgomery's expected treatments, Compass denied her request for FMLA leave.  (*Id.* ¶ 10.)

In response to Compass's reason for denying her leave, Montgomery got a corrected version of the certification of health and submitted it to Compass.  (*Id.* ¶ 11.) The revised certification was signed by a nurse, rather than Montgomery's treating physician.  (*Id.* ¶ 12.)  Instead of automatically denying Montgomery's revised request for leave, Compass insisted that she submit to a medical exam performed by a physician with SSM Medical Group, a health care provider with which Compass routinely contracts.  (*Id.* ¶¶ 13-14.)  Montgomery complied with the requirement on October 18, 2013.  (*Id.*)  At the exam, the doctor informed Montgomery that she was not fit for duty as a flight attendant.  (*Id.* ¶ 14.)

Montgomery contested the finding that she was unfit for duty.  Her personal physician sent a letter to Compass on November 12, 2013, explaining that he believed she was fit to fly and not suffering from any conditions that would prohibit her from performing her duties as a flight attendant.  (*Id.* ¶ 15.)  On November 15, 2013, Compass denied Montgomery's request for leave once again, however, citing the SSM Medical Group doctor's conclusion that she was unfit for duty.  (*Id.* ¶ 16.)  At that time, Compass also informed Montgomery that they would be charging her October and November absences as sick days not covered by FMLA leave.  (*Id.*)  Montgomery requested that her fitness for duty be evaluated by an outside physician chosen by her doctor and Compass's doctor, but Compass refused.  (*Id.* ¶¶ 17-18.)

Compass then sent Montgomery an email on December 9, 2013, expressing concern that she may have submitted "fraudulent, forged and/or altered documentation in connection with a request for leave under the FMLA." (*Id.* ¶ 19.) Compass informed Montgomery that a meeting would be held on December 12, 2013 to discuss this concern. (*Id.*) Compass did not attempt to contact Montgomery's doctor to verify the authenticity of the certification of health, (*id.* ¶ 20), but her doctor proactively sent a memorandum to Compass on December 10, 2013, affirming that the certifications Montgomery submitted were authentic, unaltered, and completed by the physician and his staff, (*id.* ¶ 21).

Montgomery attended the December 12, 2013 meeting, at which Nicole Mielke, Compass's manager of inflight operations, stated that Montgomery "submitted fraudulent, forged and/or altered documentation in connection with a request for leave under the FMLA." (*Id.* ¶ 22; Mielke Decl. ¶ 3.) This statement was made in the presence of Catriona Bagley, a representative from the Association of Flight Attendants ("AFA") union, who was present at the meeting on Montgomery's behalf. (Compl. ¶ 22; Mielke Decl. ¶ 13; *id.*, Ex. C at 3-4.)[1] The following day, Compass sent Montgomery a letter terminating her employment "for submitting fraudulent, forged and/or altered documentation in connection with a request for leave under the Family and Medical Leave Act (FMLA)." (Compl. ¶ 23.)

## II.   COLLECTIVE BARGAINING AGREEMENT

When Montgomery applied for a position as a flight attendant with Compass, she signed a document entitled "Application Certification and Agreement," agreeing to

---

[1] Unless otherwise noted, all page numbers refer to the CM/ECF pagination.

submit "any legal claims or disputes that Compass and [Montgomery] may have . . . [to] final and binding arbitration, conducted pursuant to the American Arbitration Association's National Employment Dispute Resolution Rules, before one neutral arbitrator, who shall be selected by mutual agreement of the parties and bound to follow the applicable law."  (Compass's Mem. in Supp. of Mot. to Dismiss, Ex. 1 ("Applicant Certification and Agreement") at 2, July 30, 2014, Docket No. 19.)  That Agreement remained in effect, and then on May 1, 2013, the AFA entered into a collective bargaining agreement ("CBA") with Compass.  (Mielke Decl. ¶ 7.)

The CBA regulates the terms of flight attendants' employment and provides rules and conditions for a wide range of employment matters, including leaves of absence, medical examinations, discipline, and termination.  (*Id.*, Ex. A (Compass CBA ("CBA")).)  It also includes a set of procedures for employees to file grievances.  (*Id.* at 41-45.)  For grievances that are not settled in accordance with the initial process, the CBA has established an arbitration system called the System Board of Adjustment ("System Board").  (*Id.* at 46-50.)  As laid out in Section 11 of the CBA, the System Board hears and decides grievances, and its decisions are "final and binding" on the parties. (*Id.* at 46, 50.)

In addition to the grievance process and creation of the System Board, the CBA contains another provision relevant to Montgomery's action.  Section 14 of the CBA governs leaves of absence due to a number of different causes, both health-related and not. (*Id.* at 55-58.)  Section 14.D states that Compass "will comply with the provisions of the Family and Medical Leave Act (FMLA).  FML will run concurrent with any other

leave, including sick leave, granted pursuant to this Agreement." (*Id.* at 55.)  Section 14.K also notes that "[a] Flight Attendant may be required to provide supporting documentation related to eligibility for a leave of absence." (*Id.* at 58.)

## III.    PROCEDURAL HISTORY

Montgomery's union filed a grievance on her behalf on December 20, 2013, alleging that she was terminated without cause.  (Mielke Decl. ¶ 14; *id.*, Ex. B (Termination Letter) at 2.)  Montgomery separately filed this action on February 28, 2014.  ([Original] Compl., Feb. 28, 2014, Docket No. 1.)  On July 30, 2014, Compass moved to dismiss Montgomery's action for lack of subject matter jurisdiction and failure to state a claim.  (Def.'s Mot. to Dismiss, July 30, 2014, Docket No. 16.)  Compass maintained that the CBA required Montgomery to submit her FMLA claim to arbitration before the System Board.  On January 30, 2015, the Magistrate Judge issued a Report and Recommendation ("R&R") recommending that the Court grant Compass's motion and dismiss Montgomery's action without prejudice.  (Report & Recommendation ("R&R") at 14, Jan. 30, 2015, Docket No. 35.)  Montgomery timely objected to the R&R.  (Pl.'s Objections to the Magistrate Judge's R&R, Feb. 13, 2015, Docket No. 36.)  This matter is now before the Court on Montgomery's objections.

## ANALYSIS

## I.    STANDARD OF REVIEW

Upon the filing of a report and recommendation by a magistrate judge, a party may "serve and file specific written objections to the proposed findings and

recommendations." Fed. R. Civ. P. 72(b)(2); *accord* D. Minn. LR 72.2(b).  "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3).  "The objections should specify the portions of the magistrate judge's report and recommendation to which objections are made and provide a basis for those objections."  *Mayer v. Walvatne*, No. 07-1958, 2008 WL 4527774, at *2 (D. Minn. Sept. 28, 2008).  Objections which are not specific but merely repeat arguments presented to and considered by a magistrate judge are not entitled to *de novo* review, but rather are reviewed for clear error.  *See, e.g.*, *Martinez v. Astrue*, No. 10-5863, 2011 WL 4974445, at *3 (E.D. Pa. Oct. 19, 2011) (citing cases from numerous other jurisdictions); Fed. R. Civ. P. 72 advisory committee's note, subd. (b) ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.").

## II.   FMLA CLAIM

Compass moves to dismiss Montgomery's FMLA claim under both Federal Rule of Civil Procedure 12(b)(1) and Rule 12(b)(6).  Under Rule 12(b)(1), Compass argues that the Court lacks subject matter jurisdiction because the CBA requires her to arbitrate her FMLA claim before the System Board.  Subject matter jurisdiction is also lacking, Compass contends, because the Railway Labor Act preemptively controls labor-related disputes in the airline industry and requires Montgomery to submit her claims to mandatory arbitration.  Under Rule 12(b)(6), Compass argues that Montgomery's two state law claims should be dismissed for failure to sufficiently plead the essential elements of those causes of action.

## A.      Rule 12(b)(1) Standard

"A motion to dismiss pursuant to Rule 12(b)(1) challenges the Court's subject matter jurisdiction and requires the Court to examine whether it has authority to decide the claims." *Damon v. Groteboer*, 937 F. Supp. 2d 1048, 1063 (D. Minn. 2013).  In deciding a motion under Rule 12(b)(1) the Court must first "distinguish between a 'facial attack' and a 'factual attack.'" *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990) (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)). "In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993).  In other words, in a facial challenge, the court "determine[s] whether the asserted jurisdictional basis is patently meritless by looking to the face of the complaint, and drawing all reasonable inferences in favor of the plaintiff." *Biscanin v. Merrill Lynch & Co.*, 407 F.3d 905, 907 (8th Cir. 2003) (citations omitted).  In a factual attack, the court "inquires into and resolves factual disputes," *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 801 (8th Cir. 2002), and is free to "consider[ ] matters outside the pleadings," *Osborn*, 918 F.2d at 729 n.6.  The nonmoving party in a factual challenge "does not have the benefit of 12(b)(6) safeguards." *Id.*

### B.    Arbitration under the CBA

### 1.    Clear and Unmistakable Waiver of the Judicial Forum

Compass's primary argument in favor of its motion to dismiss is that the CBA requires Montgomery to submit her FMLA claim to arbitration rather than raise it in federal court.  Section 11 of the CBA, establishing the System Board, forms a clear agreement to arbitrate "grievances arising under the terms of this Agreement."  (CBA at 46.)  Neither party disputes that an agreement to arbitrate certain claims exists under the CBA; the issue is whether an FMLA claim is one that must be arbitrated under the agreement.  The Court concludes that it is.

Union-negotiated collective bargaining agreements like Compass's CBA may require arbitration of statutory claims, but the waiver of a judicial forum for such claims must be "clear and unmistakable."  *Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 80 (1998).  Courts "will not infer from a general contractual provision that the parties intended to waive a statutorily protected right unless the undertaking is explicitly stated." *Id.* (internal quotation marks omitted).  Montgomery concedes that an arbitration provision would be clear and unmistakable if it specifically named, within the same section of the agreement, the statutory right subject to mandatory arbitration.  For example, the United States Supreme Court found a clear and unmistakable agreement to arbitrate statutory claims in *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247 (2009).  In *14 Penn Plaza*, one section of the collective bargaining agreement included language stating that "claims made pursuant to Title VII of the Civil Rights Act, the Americans with Disabilities Act, [or] the Age Discrimination in Employment Act . . . shall be subject

to the grievance and arbitration procedures . . . as the sole and exclusive remedy for violations." 556 U.S. at 252.

The language in the *14 Penn Plaza* agreement is very similar to the language in the Application Certification and Agreement document Montgomery signed when she applied for a position with Compass:

> I UNDERSTAND AND AGREE that . . . **any legal claims or disputes that Compass and I may have . . . with respect to my . . . employment or termination of employment** (except for worker's compensation and unemployment compensation claims and claims arising out of any applicable collective bargaining agreement) **shall be decided exclusively by final and binding arbitration**, conducted pursuant to the American Arbitration Association's National Employment Dispute Resolution Rules, before one neutral arbitrator, who shall be selected by mutual agreement of the parties and bound to follow the applicable law.  Both Compass and I intend for this agreement to be construed as broadly as possible to cover, by way of example only, any claims under federal, state or local statutes or common law, **such as Title VII of the Civil Rights Act, the Age Discrimination in Employment Act, the Americans with Disabilities Act, [or] the Family and Medical Leave Act** . . . .

(Applicant Certification and Agreement at 2 (emphasis added).)  In her objection to the R&R, Montgomery acknowledges that the provision in *14 Penn Plaza* and the language in her Applicant Certification and Agreement would both constitute a clear and unmistakable waiver of a judicial forum for the named statutory claims.

Montgomery argues that the CBA is different, however, because its reference to the FMLA is not contained within the same provision as the agreement to arbitrate.  She urges the Court to instead view this case as analogous to *Bradley v. Compass Airlines, LLC*, No. 12-2471, 2013 WL 2443848 (D. Minn. June 5, 2013), in which the court interpreted an identical arbitration provision to the one at issue here.  In *Bradley*, the court found that there was no clear and unmistakable agreement to arbitrate a Title VII

- 10 -

racial discrimination claim under the collective bargaining agreement, because nothing in the entire CBA specified "any federal or state laws," and the arbitration provision did "not limit [the plaintiff]'s relief for statutory claims to arbitration."  2013 WL 2443848, at *5.  The anti-discrimination provision in the *Bradley* collective bargaining agreement was worded generically, promising that Compass would "comply with applicable State and Federal laws which prohibit discrimination against any employee because of race, creed, color, religion, national origin, sex, age, disability or status as a military veteran."  *Id.* at *1.  No particular federal statutes were mentioned, much like in *Wright*, where the collective bargaining agreement merely provided that "[t]he Union agrees that this Agreement is intended to cover all matters affecting wages, hours, and other terms and conditions of employment," and that "[i]t is the intention and purpose of all parties hereto that no provision or part of this Agreement shall be violative of any Federal or State law."  *Wright*, 525 U.S. at 73.  The plaintiff in *Wright* sought to raise a claim in federal court under the Americans with Disabilities Act, which was not named in or incorporated into the collective bargaining agreement.  There, the Supreme Court found the language in the agreement to be insufficiently clear to compel arbitration of a claim under the Americans with Disabilities Act.  *Id.* at 80-82.

Because the language in the *Bradley* arbitration provision is the same as in Compass's CBA in this case, and the court did not compel arbitration in *Bradley*, Montgomery contends that the Court should likewise decline to compel arbitration here. The Court's inquiry is not solely into the wording of the arbitration provision, however. A general arbitration provision, paired with an express incorporation of a statutory

protection into an agreement, can suffice to serve as a clear and unmistakable agreement to arbitrate claims arising under that statutory protection.   *Ibarra v. United Parcel Service*, 695 F.3d 354, 359-60 (5th Cir. 2012).   The arbitration provisions in *Bradley* and in this case are both general, but here, unlike in *Bradley* or *Wright*, the CBA contains an explicit statutory reference to the FMLA.   Although Compass's promise to comply with the FMLA is contained within a separate section of the CBA than the arbitration provision, the arbitration section expressly applies to all "grievances arising under the terms of this Agreement."   It is not narrowly limited to any specific subset of employment matters.

Montgomery argues that the agreement to arbitrate does not clearly refer to FMLA claims because the FMLA provision falls under a different section of the agreement.   But there is no requirement that the statute be identified in the same section as the arbitration provision, as long as "the parties 'include an explicit incorporation of statutory [] requirements **elsewhere in the contract**.'"   *Ibarra*, 695 F.3d at 359 (internal quotation marks omitted) (emphasis added) (quoting *Carson v. Giant Food, Inc.*, 175 F.3d 325, 331-32 (4th Cir. 1999)).   "[F]or a waiver of an employee's right to a judicial forum for statutory discrimination claims to be clear and unmistakable, the CBA must, at the very least, identify the specific statutes the agreement purports to incorporate **or** include an arbitration clause that explicitly refers to statutory claims."   *Id.* at 359-60 (emphasis added).   It need not do both.   Because the Court finds that Compass's CBA included a broad arbitration provision for claims arising under the CBA, and the CBA explicitly

incorporated the FMLA into Section 14, the Court concludes that the CBA clearly and unmistakably mandates arbitration of FMLA claims.

### 2.      Mandatory Nature of Arbitration under the CBA

Montgomery argues that even if her FMLA claim is encompassed by the CBA's arbitration provision, the provision merely offers her the right to submit her claim to arbitration should she choose to do so – it is not a mandatory grievance resolution process.  Montgomery is correct that, like in *Bradley*, the arbitration provision in the CBA does not include language that "designates [the grievance and arbitration] procedures as the sole and exclusive remedy."  *Bradley*, 2013 WL 2443848, at *5 (internal quotation marks omitted).  But even without using explicit language that arbitration shall be "the sole and exclusive remedy for violations," *14 Penn Plaza*, 556 U.S. at 252, an arbitration provision may still be construed as mandatory, *Kayser v. Sw. Bell Tel. Co.*, No. 10-1495, 2010 WL 5139351, at *1 (E.D. Mo. Dec. 10, 2010) (explaining that the CBA at issue contained "a mandatory arbitration clause" when it provided that, in the event of disputes arising under the CBA, the union or company "**may** submit the issue of any such matter to arbitration for final decision" (emphasis added)).

In a decision last year, the Fifth Circuit explained how distinct arbitration provisions within an agreement can be read together to demonstrate an intent to make a grievance procedure mandatory.  *Gilbert v. Donahoe*, 751 F.3d 303, 309-10 (5th Cir. 2014).  The court identified subsections of the collective bargaining agreement that referenced a timeline for submitting grievances, a rule that the failure to raise a grievance

would constitute a waiver of the grievance, and an ultimatum that an "arbitrator's decision will be final and binding." *Id.* at 309. Reading these subsections together, "the district court [had] held that these provisions created a mandatory grievance procedure." *Id.*

Compass's CBA includes similarly-worded subsections. Section 10.B.2 of the CBA explains that the process by which an employee may challenge a disciplinary action is

> by filing a written grievance with the General Manager, Inflight, or her/his designee. Delivery of the grievance will be in person or by mail. Such grievance **must** be received by the General Manager, Inflight, or her/his designee, **no later than fourteen (14) calendar days** following the Flight Attendant's receipt of the Company's written notice of discipline.

(CBA at 42.) Tracking the waiver subsection in *Gilbert*, the Compass CBA goes on to state that "[i]f a grievance is not filed . . . within the time limits prescribed in this Section, the decision of the Company will become final and binding." (*Id.* at 45.) Finally, the CBA expressly states that any decision of the System Board "shall be final and binding." (*Id.* at 50.)

Much like the provisions in *Gilbert*, these provisions indicate that grievances arising out of disciplinary actions must be raised through the CBA's grievance and arbitration process. If they are not, Compass's decision becomes final and binding. As a result, the Court concludes that the Compass CBA arbitration provision requires mandatory arbitration for any claims arising under the terms of the CBA, including, as explained above, FMLA statutory claims, because they are incorporated into the terms of the agreement in Section 14.

### 3.    Regulation Against Waiving FMLA Rights

In her objection to the R&R, Montgomery argues that she cannot be compelled to arbitrate her FMLA claim, because it would amount to a waiver of her FMLA rights to recover liquidated damages and attorney's fees.  Montgomery correctly cites the FMLA Regulation prohibiting waiver of FMLA rights.  29 C.F.R. § 825.220(d) ("Employees cannot waive, nor may employers induce employees to waive, their prospective rights under the FMLA.").  As support for her argument, Montgomery points to *Alexander v. Gardner-Denver Co.*, 415 U.S. 36 (1974), in which the Supreme Court held that unions cannot waive the federal forum rights of employees.  When the Supreme Court later decided *Wright*, it considered its prior ruling in *Gardner-Denver* and expressed uncertainty as to whether Gardner-Denver retained its precedential force in the face of a collective bargaining agreement explicitly waiving a federal statutory right in the agreement.  *Wright*, 525 U.S. at 80.  The Supreme Court acknowledged that the precise contours of the law surrounding waivers of statutory rights in collective bargaining agreements are not sharply defined, but that a clear and unmistakable agreement to arbitrate might constitute a permissible waiver of a federal judicial forum.  *Id.* at 76-77, 79-80.

The Eighth Circuit recently concluded that FMLA claims, specifically, may be subject to a clear and unmistakable agreement to arbitrate.  *Thompson v. Air Transp. Int'l Ltd. Liab. Co.*, 664 F.3d 723 (8th Cir. 2011).  In *Thompson*, the Eighth Circuit found that "[e]mployment-related civil rights claims, like [the plaintiff]'s **FMLA** and [state civil rights act] claims, can be subject to a mandatory arbitration provision."  *Id.* at 727

(emphasis added).   The court found that such a waiver is permissible because it falls within the realm of concessions for which unions may bargain with employers, and, ultimately, "[a] waiver of a judicial forum is not a waiver of claims but instead a waiver of 'only the right to seek relief from a court in the first instance.'"   *Id.* at 726-27 (quoting *14 Penn Plaza*, 556 U.S. at 265-66).   As long as the plaintiff does not suffer a "complete loss of a forum," waiver of a **judicial** forum is permitted under a collective bargaining agreement.   *McNamara v. Yellow Transp., Inc.*, 570 F.3d 950, 957 (8th Cir. 2009).

In this case, Montgomery will not suffer a complete loss of a forum for her FMLA claim if the Court does not have subject matter jurisdiction, because she may arbitrate her claim before the System Board.   Indeed, the AFA has actively pursued arbitration on her behalf for more than one year and recently filed an action before this Court seeking to compel Compass to arbitrate Montgomery's grievance arising out of her termination. (*Ass'n of Flight Attendants-CWA, AFL-CIO v. Compass Airlines, LLC*, No. 15-146, Compl., Jan. 22, 2015, Docket No. 1.)   Arbitration of Montgomery's FMLA claim appears to be particularly appropriate in this case, where one of the two bases for her claim comes not from the FMLA but from Section 29.B.3 of the CBA.[2]   (Compl. ¶ 28 ("Defendant violated the FMLA by refusing plaintiff's request for a third party medical examiner to determine whether she was fit for duty.").)   As a result, resolution of Montgomery's claim involves not only a determination as to whether Compass complied

---

[2] Section 29.B.3 of the CBA states, "In the event that the findings of the medical examiner chosen by the Flight Attendant are timely filed with the Company and they disagree with the findings of the medical examiner employed by the Company, the Company will, at the written request of the Flight Attendant, ask that the two medical examiners agree upon and appoint as promptly as possible, but no later than fifteen (15) days, a third qualified and disinterested medical examiner, preferably a specialist, for the purpose of making a further examination." (CBA at 93.)

with the FMLA but also requires an interpretation of the CBA and a finding as to whether Compass violated the agreement – a task for which a System Board arbitration panel is especially well-suited.

Further, should Montgomery prevail on her FMLA claim at arbitration, she would have the opportunity to pursue liquidated damages and attorney's fees in federal court, given that those remedies would not be available to her at arbitration.  *See Dillaway v. Ferrante*, No. 02-715, 2003 WL 23109696, at *10-*11 (D. Minn. Dec. 9, 2003) ("[W]here an employee has prevailed at arbitration, but was not awarded the full panoply of remedies as the employee would be allowed by the remedial statute, it is appropriate for the employee to pursue his claims in court . . . . [Where a] plaintiff claims that he did not recover the full equivalent of relief obtainable under the FMLA because he was not awarded liquidated damages . . . plaintiff can pursue his claim for liquidated damages [in federal court].").   Consequently, the Court concludes that the AFA's bargained-for waiver of a judicial forum in the first instance for FMLA claims is permissible.   The Court will therefore overrule Montgomery's objection with respect to permissibility of the judicial forum waiver and grant Compass's motion to dismiss Montgomery's FMLA claim for lack of subject matter jurisdiction.[3]

---

[3] Compass also raises the Railway Labor Act arbitration requirements for the airline industry and Montgomery's Application Certification and Agreement as additional bases for dismissing her FMLA claim for lack of subject matter jurisdiction.  The Magistrate Judge concluded that the Court lacks subject matter jurisdiction under the CBA's arbitration procedures, and therefore he did not reach Compass's additional grounds for dismissal.  Because the Court has determined that subject matter jurisdiction is lacking due to the agreement to arbitrate FMLA claims under the CBA, the Court will not address Compass's additional arguments for why subject matter jurisdiction is lacking.

III.    SUPPLEMENTAL JURISDICTION

Montgomery's objection does not address the R&R's dismissal of her state law claims for lack of supplemental jurisdiction.    Reviewing the Magistrate Judge's determination, and in light of the Court's conclusion that Montgomery's FMLA claim must be dismissed for lack of subject matter jurisdiction, the Court finds no clear error in the Magistrate Judge's recommendation that the claims be dismissed.    Thus, the Court will adopt the R&R as to dismissal of Montgomery's defamation and negligent infliction of emotional distress claims for lack of jurisdiction.  (R&R at 13-14.)


**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, the Court **OVERRULES** Montgomery's objection [Docket No. 36] and **ADOPTS** the Report and Recommendation of the Magistrate Judge [Docket No. 35].  **IT IS HEREBY ORDERED** that:

1.    Defendant's motion to dismiss [Docket No. 16] is **GRANTED**.

2.    This action is **DISMISSED without prejudice**.


**LET JUDGMENT BE ENTERED ACCORDINGLY.**


DATED:  March 30, 2015                          ___s/ John R. Tunheim___
at Minneapolis, Minnesota.                          JOHN R. TUNHEIM
                                                    United States District Judge